We'll move on to the second case for argument, which is Cassel v. O'Malley, case number 23-55402. May it please the Court, Lawrence Rolfing on behalf of Stacie Cassel. This is a social security disability case. It's a cessation case arising out of a very old finding that Ms. Cassel was in fact disabled. The primary thrust of this case centers on the documented mental impairment in 2007 and re-documented in 2018. Ms. Cassel lacks the sufficient concentration to perform serial 7s or in the later evaluation even serial 5s, which is not standard testing, but if you can't do serial 5s that's pretty poor concentration. And so this manifests in two ways. The first thing that it manifests as, Dr. Riyanajad in the earlier application said that Ms. Cassel would have moderate to severe deficiencies in performing detailed and complex tasks, which would eliminate the ability to perform work that's classified in this case as reasoning level 2, which is all of the work that's been described. And the fact that it was an older opinion, it's still probative to this time period because the findings on concentration on mental status examination, serial 7s, is the same. It's poor or failed. She doesn't have the concentration to subtract 7 serially from 100. She fails on that. She can't even do 5s, which is a far simpler task. The other manifestation of this problem is that the judge described Ms. Cassel as able to perform simple work as this court has defined in Zavalin and its progeny as including reasoning level 2, but limited her further to a static work environment. And a static work environment is an unchanging environment. It doesn't fit with the types of work that are performed at reasoning level 2. It is quintessentially the type of work that would be described as reasoning level 1 and then even a small slip of that. Let me ask you about that because for a static work environment, does that describe, I mean that's a limit, that's an accommodation that could be made. It doesn't really describe anything about the task performed, does it? I mean you could do complicated tasks in a static work environment or you could do simple tasks in a non-static work environment. Let me just break that into pieces, Judge. The commissioner disavows the use of accommodation in disability adjudications at all? That's fine. But I guess I wasn't using it as a legal hook, I was just saying it doesn't seem to me that a static work environment defines the disability, I mean it doesn't define the work that can be done, it defines the environment in which it can be done. So you could have, it doesn't really tell, it doesn't tell us anything about the task that she can do, just where she can do it and under what environment. But static also implies not the task singular, but the tasks plural that she can perform. And if an occupation requires more than one task... You would define it as a non-static work environment. Right, because they're doing different tasks throughout the day or at different days or at different periods of time, but it's not a static work environment. Whereas reasoning level one and two, which is performing one and two step instructions, and many of the occupations that are defined as reasoning level one have one function that's performed as defined in the dictionary of occupational titles. And that is, that is what static means. And this court recently in Stifler versus O'Malley said that the limitation to occasional changes was, fits within the rubric of reasoning level two. And that decision is the final binding precedent of the circuit. But this case is a much more strict limitation. It is a further narrowing of the kinds and types of work that Stacy Cassell can perform. A complex job in a static work environment may be physically static. I sit in my office every day and I sashay up to my computer and I look at records and I write briefs. And so I do the same thing every day. But it's not, it's complicated because as this court wrestles with varying fact patterns, I have to wrestle with varying fact patterns. So it is mentally non-static. It is... And that's your definition, so that's your definition of static work? Yes. It is what kinds of tasks is this person required to perform? And so a static work environment is going to be the same nature and quality of tasks or tasks singular over and over again. It's one and two step instructions. There's no details, there's no complexity, there's little or no variability. That is a static work environment. A non-static work environment is going to require more duties, more variability, more variables, and even if they're from standardized situations, that is a non-static work environment. The only other issue that's kind of lingering in the background is the doctrine of the continuing presumption, which this court in Lambert struck down under Brandeck's deference. I don't believe that we need to get into Loper-Bright on the facts of this case. The fact of the matter is that even under the Patty D. Schweiker progeny, including Chavez, evidence of a pre-existing impairment flows forward in time absent a change in circumstances. And the district court in this case says, well, her asthma got better. It's like, yes, but her mental functioning never did. Her mental functioning never did. And the record doesn't support a conclusion that her mental functioning ever got better, which is why Dr. Rayenjad's opinion is still probative today. Do you want to say something about your motion for a sentence six remand? And if I can, my question is, as I understand our case law under Luna, that sort of remand is appropriate if you have some later decision that's not reconcilable with the earlier one. And here, I mean, the stroke happened during the time period that's at issue in this case, but the determination of the effects that it was causing that caused impairment was afterwards. So can't the two decisions be reconciled by saying, well, you know, the symptoms were worse later on, and they don't seem inconsistent. So what's your answer to that? The ALJ in Ms. Cassell's second application for benefits bookended two findings. The stroke in 2019 and the continued lack of ability to ambulate effectively in 2023 and 2024. The ALJ never suggested that Cassell got worse during this period of time, only that she had a stroke that damaged her ability to engage and function, the musculature to ambulate effectively, and that it's disabling as of the date of application. And the date of application in an SSI case is typically the way that an ALJ is instructed to adjudicate a Title 16 claim because there's no retroactivity. You can't get benefits until the month after the month in which you apply. And so to infer that ALJ Reich's decision is limited to the date of application in 2021 is actually not the right inference to draw. That inference doesn't flow from it because of the nature, the non-retroactivity nature of an SSI claim. And we also have, in terms of filing a motion for sentence experiment, we have a good cause requirement. And Stacey Cassell appeared at her termination hearing by herself. She's a borderline intellectual functioning person. That's well documented in this file. And she goes into the hearing alone and doesn't have the sophistication to realize that her later medical events are actually relevant to the claim that was before ALJ Hockensmith in 2020. And so the unique facts of this case, she has a mental impairment, she's unrepresented, and we have a later ALJ decision finding that based on the evidence of the 2019 stroke that she's disabled not later than the month after the month in which the appeals counsel denies review on Judge Hockensmith's decision. That establishes that this decision and the evidence that this decision is pointing to relates back in time and there is good cause for a remand because of Stacey Cassell's borderline intellectual functioning and unrepresented status. What's the closest authority that says that we take into account that she was unrepresented and don't have to look at the record that was made? The closest authority would be Brown versus Heckler where the court says the ALJ has a duty to fully and fairly develop the record. And it would fall under that umbrella of fully and fairly developing the record. Yeah. Okay. Thank you.  Go ahead, counsel. Good morning. May it please the court. C. Mody on behalf of the Commissioner of Social Security. This case has taken a number of twists and turns, but ultimately nothing changes the fact that substantial evidence supports the Commissioner's final decision and should be affirmed. Could you just slow down just a little bit? Of course, Your Honor. Thank you. So, Your Honors, the context of this case is that the claimant was found disabled in March 2010 because she had respiratory impairments that satisfy the criteria of a presumptively disabling impairment. No other findings about the claimant's other impairments were made as part of that determination. And the claimant's subsequent medical improvement in her respiratory impairments to the point that it no longer satisfied the criteria of a disabling impairment, that is not an issue at any point in this litigation. Your position is that this is a whole new claim based on new disabilities? Well, Your Honor, when it comes to the mental limitations and the ALJ's assessment of the mental limitations, that was anew in the claim that's at issue in this appeal. Because there was never any findings made about the claimant's mental impairments back in when she was found disabled in 2010. So there's no basis for comparison. The ALJ determined the claimant's mental limitations essentially anew as part of the case at issue here. So looking at the time period from December 2017 through September 2020. And based on the evidence that was before the ALJ, so looking at the consultative examination, the same examination my opponent mentions where she did have limitations performing serial sevens and serial fives calculations. That same examiner found that she had intact concentration, persistence, and pace overall and concluded that she had no limitations performing simple routine tasks and at most only mild limitations performing mental activities overall. We are stuck with looking at whether or not there was improvement in the conditions that she was originally found disabled. Yes, Your Honor. It's solely... That we ignore everything else that we know existed then. Well, Your Honor, because there was no basis of comparison fact. The only findings were made regarding the respiratory impairment. And so that improvement was made in that context. There was nothing to compare with the mental limitations. But even when we look at that evidence, which already predates the period at issue by almost over nine years, even then there's absolutely nothing inconsistent with what that examiner found in 2008. Because that examiner also found that the claimant could perform, could carry out simple instructions without any limitations. That examiner did find that the claimant had, you know, moderate to severe limitations in performing detailed and complex tasks. But the ALJ also found that too. The ALJ found that the claimant couldn't perform detailed and complex tasks and found that she can only perform simple routine tasks. So again, there's absolutely nothing inconsistent with even this remote evidence. Can you address this static work environment issue? I mean, do you take the position that static work environment describes the environment that you work in, or does it actually describe the tasks that you're asked to perform? Your Honor, this case, this court in Stifler has answered that question definitively by saying that the work environment relates to your physical location, the surroundings where you work. It does not relate to the task itself. And the claimant in Stifler made the same error that the claimant here is making, which is trying to conflate tasks with environment. This court in Stifler clearly said that they're distinct, that tasks involve your responsibilities during the day, what you do. And as you are, I think, in the hypothetical you had mentioned earlier, Your Honor, that somebody can perform detailed tasks in a static work environment or simple tasks in a changing environment. But ultimately, they're different. And the way we know they're different is because the RFC lists them as different things, tasks versus environment. Well, and didn't ALJ also look at, basically do a comparator and say, look, you can clearly do multiple tasks because your daily life involves multiple tasks. Like, I think for her, it was, you know, child care and, you know, other things that she was involved in on a day, you know, shopping. I mean, so if you can do that, then why can't you, you can do multiple tasks, but did recognize some limitations, right? Exactly, Your Honor. The ALJ determined the claimant's functional capacity based on the totality of the evidence, including the medical opinions I outlined earlier, which plainly endorsed her ability to perform a minimum of simple tasks. And also looked at the claimant's day-to-day activities, her ability to take care of her children and manage her household, looked at the treatment evidence, her intact mental status findings, looked at all of that, and then crafted the RFC saying that she could perform simple routine tasks in a simple, in a static work environment. And again, when it comes to comparing the RFC with the Dictionary of Occupational Titles, and as this Court held in Stifler, there's absolutely nothing inconsistent between an RFC for simple routine tasks and Reasoning Level 2 jobs, which are at issue here. The ALJ relied upon Reasoning Level 2 jobs to find the claimant not disabled, and it's the exact same circumstance here as in Stifler, that we have a simple routine task RFC and Reasoning Level 2 jobs, and they're entirely compatible with one another. And then the issue of the work environment is completely irrelevant to this calculus, because the DLT doesn't discuss work environments. It is silent on that issue about the work setting, their location, and things like that. So there can be no conflict between the RFC and the DLT on an issue where the DLT is silent. And now I think beyond the issue of the ALJ's evaluation, the mental limitations and the application of Stifler to this case, which should be controlling, I want to touch briefly on the Sentence 6 motion that was filed recently, and to discuss why it does not justify, why remand under Sentence 6 of Section 405G is not justified here. And I think, Your Honor, Judge Miller touched on this by highlighting that the two claims involve two different periods. We have the subsequent award, which deals with the period from July 2021 onward through the decision date of August 2024. And the decision issue in this appeal runs from 2017 to September 2020. And so we have a gap of almost 10 months separating these two decisions. And in the cases where this Court has found that a subsequent award of benefits does justify remand under Sentence 6, we've had a much tighter timeline. Like in Luna, for example, Your Honor, the claimant was found not disabled on a Wednesday and was found disabled as of the next day, basically. And so the Court here found that it was not possible to reconcile the two when they were basically abutting time periods. Here we have a gap of nearly 10 months. And as Your Honor also highlighted as well, we have also different pieces of, different impairments, different theories of the case. In this case, we've discussed mental limitations and the respiratory impairments. That dealt entirely with, that finding of disability was based on a stroke. And I think I want to touch on another point that my opponent made. But the stroke did occur during the time period. That's at issue in this case, didn't it? Well, Your Honor, ultimately we have absolutely no evidence of that. I know that there's reference in the ALJ's decision, but notably there's nothing attached to the motion that documents a stroke occurring during the time period issue. And I think we noted in our opposition, the claimant did not reference experiencing a  The hearing in the case at issue was in May 2020, when the stroke supposedly had occurred. And even though she was not represented, the ALJ provided her a full opportunity to testify about all of her conditions. And she did so. She spoke about her history of respiratory impairments, her history of psychiatric symptoms, her history of experiencing a heart attack, a stent procedure. She mentioned all of that in detail. The ALJ provided her multiple opportunities, open-ended questions. Is there anything else you'd like to share with me here? And twice she said no. And so this was in May 2020. And notably, the claimant, when she requested a review from the Appeals Council, was represented. She had an attorney. And her attorney submitted a brief in May 2021. There was no mention of a stroke in that brief. Presumably if she had a stroke and had limited her to the degree that she alleges, she would mention it, at least to her attorney by then. There was no mention of it in that Appeals Council brief. As part of her request for review, she submitted dozens of pages of evidence, including evidence from 2019 and 2020. When again, supposedly she had experienced a stroke, there's zero mention of a stroke in any of those records. There was no mention of a stroke throughout the district court proceedings and throughout the briefing in this case until she filed the motion. There was no mention of a stroke. So if she, again, if we had a condition like that, which did limit her to that degree and if it did have any bearing on this case, one would have expected it would have been raised at some point until the eve of this argument, but it wasn't. So ultimately the claimant, and the claimant importantly has the burden to show that remand under Sentence 6 is justified. She can, by failing to identify any evidence that calls into question the decision at issue here, she has not met that burden. So, if there's any further questions. I don't, I don't think so. So for these reasons, we ask that this court uphold this court's order in judgment affirming the conditions by decision in this case. Thank you counsel. We'll give you rebuttal. Appeals Council denied review in May of 2021 and the appointment of representative is sent to the Appeals Council in June of 2021. She was not represented before the Appeals Council by counsel. It's just not, counsel misread the record. The appointment of representative is dated after the date of the Appeals Council denial of review. And Judge Schroeder posited the question of whether the claimant is limited to the impairments that were existing when she was found disabled in 2010, and that's not true. You're not limited to the impairments that exist in 2010 because the judge found medical improvement on the asthma and then adjudicated not as of the termination date, but through the date of decision, which would include all of the impairments that arose between the termination date in 2017 and the date of decision in 2020. And so everything counts. Everything counts. And the judge really did not give Ms. Cassell an opportunity to even cross-examine the vocational expert. He just closed the hearing after the vocational expert testified and he asked, is your testimony consistent? And not that I would have expected Ms. Cassell to have a vigorous interrogation of the vocational expert at that time. Most attorneys don't do it right, so I wouldn't expect somebody with a borderline intellectual functioning to do it right. Denson v. Heckler, Lester v. Chader, and the entire line of cases, including Murray v. Heckler, they all require that the judge articulate reasons so that we understand why the judge rejected Dr. Reynajad's opinion. And we have these bookend findings of inadequate mental functioning on concentration persistence pace. During the period that Cassell applied for benefits, the regulations, the listings stated that serial 7s and serial 3s was the quintessential attest for maintaining concentration persistence and pace. And it's true that the later evaluation in 2018 said that Ms. Cassell had no limitations. But before saying that she has no or mild limitations, the doctor said, if she gets benefits, she's going to need a representative payee, which means that she's not capable of maintaining her own finances. According to this doctor's report. And not being able to maintain your own finances is inconsistent with her running my cash register. It's just not, it doesn't make sense. And a cash register is a reasoning level 3 job. It's not simple. But if somebody can't handle their own finances, that speaks highly of their inability to sustain mental functioning. And this court in Garrison and other cases have adopted the Seventh Circuit standard of cautioning the agency not to use activities of daily living that are performed when I feel like I can do it, as opposed to getting into work and performing work at the beck and call of a reasonable employer. Cassell, according to the mental status examinations in 2007 and in 2018, and according to Dr. Rajenishad, her attention deficit disorder and borderline intellectual functioning means that she can't do that kind of work. She can't. She couldn't do it then and she can't do it now. The fact that she was disabled, found disabled on a different basis, the asthma listing, is not dispositive of the probative value of that earlier psychological examination.  Thank you. I'll yield back my 30 seconds. We'll take it back. It's always good to give the court something. I was told earlier that I'm in time debt to the court already. Well, we're grateful to your preparation and both your arguments have helped us understand the case. So thank you. The case is now submitted.
judges: SCHROEDER, NELSON, MILLER